In re HASKVITZ.

In re AVED.

In re AVED et al.

Nos. 18280, 18279, 18641.

United States District Court
D. Minnesota, Fourth Division.

March 24, 1952.

---

———◆———

Henry W. Haverstock, Jr., and A. Lyman Beardsley (of Morley, Cant, Taylor, Haverstock and Beardsley), Minneapolis, Minn., for petitioner.

Joe A. Walters, Minneapolis, Minn., for trustee in bankruptcy.

NORDBYE, Chief Judge.

On or about May 8, 1950, the National Cash Register Company, hereinafter sometimes called the register company, sold two cash registers under two separate conditional sales contracts to Park Plaza, a co-partnership consisting of Harold Aved and Robert Haskvitz. Each contract reserved title to the register company until the purchase price was fully paid and was signed "Park Plaza, by Harold Aved." The partnership address was given in the contract, and at all times material herein was, 6508 W. Lake St. This address is in St. Louis Park, Minnesota, which is a municipality immediately adjacent to Minneapolis. Each contract was filed in the office of the register of deeds for Hennepin County, Minnesota, on or about June 15, 1950. Both Minneapolis and St. Louis Park are located in Hennepin County.

The partners and the partnership now have been declared bankrupts by this Court, and the cash register company has filed secured claims for the amount still due on the cash registers. The Referee in Bankruptcy denied the register company's reclamation petition. He ruled that because the conditional sales contracts had been filed in the register of deeds' office of Hennepin County rather than in the office of the village recorder for St. Louis Park, Minnesota, where the partnership resided and the property was located, the contracts were void as against the Trustee in Bankruptcy. The cash register company brings review of that order to this Court. The issue certified by the Referee is,

"1. Is the filing and recordation of conditional sales contracts proper under the laws of Minnesota where such filing and recordation is in the office of the Register of Deeds of Hennepin County, Minnesota, and the vendee named in and the property covered by the contracts are situated at all times in the incorporated Village of St. Louis Park in Hennepin County, Minnesota?"

Consequently, the sole issue presented here is whether the conditional sales contracts were recorded in the correct office. If they were not, they are void as against creditors of the bankrupt, Minnesota Statutes Annotated, § 511.18, and therefore as against the Trustee in Bankruptcy.

Section 511.18 of Minnesota Statutes Annotated provides that a conditional sales contract shall be void as to creditors of the vendee "unless the note or contract, or a copy thereof * * * be filed as in the case of a chattel mortgage." Section 511.04 states that a properly executed chattel mortgage

" * * * may be filed with the clerk or recorder of the town or municipality in which the mortgagor resided at the time of its execution, if a resident of the state, or of that in which the property was then situated, if a nonresident. If such place be in an unorganized town, the filing may be with the register of deeds of the county. Duplicates of such mortgage, or copies thereof certified by any officer with whom it has been properly filed, may be filed in other places wherein any part of such property was situated when the same was made."

Section 511.20 provides,

"(1) Any bill of sale, instrument evidencing a lien on, or reserving title to personal property and satisfactions of liens on personal property, shall be filed with the register of deeds in the

county in which the personal property is situate." [1]

Section 511.26 provides,

"Sections 511.20 to 511.26 shall not apply to cities of the first class, nor to counties wherein the salary of the register of deeds is fixed by special law."

These statutes are the ones which govern filing of conditional sales contracts and chattel mortgages in the instant situation, and therefore the question is whether Sections 511.04 and 511.26 or Section 511.20(1) applies here.

At the outset it is apparent that the meaning of these statutes is confusing and uncertain under the literal application of their provisions. For Section 511.20(1) uses situs of the personal property as the element which relates the instrument to the geographical area and to the office wherein it must be filed. Section 511.04, as written, however, uses the residence of the mortgagor as the element which relates the instrument to the geographical area and to the office wherein the instrument must be filed. Section 511.26 refers only to geographical areas. When the situs of the property and the residence of the mortgagor do not coincide, and when only the mortgagor's residence *or* only the property's situs is in one of the areas mentioned in 511.26, the problem of where to file the instrument becomes acute. The confusion and uncertainty which exists among the bar in these situations requires a determination of the true meaning of these statutes. Such a determination will determine the statutes' meanings with respect to the case now before the Court. A consideration of the statutes' history and the inter-

pretations applied to them by the Minnesota Supreme Court is revealing.

Section 511.04 traces its origin to Sections 2 and 5 of Chapter 33, Minnesota Session Laws of 1860. It first appeared in the form now appearing as 511.04 when it became Section 3462 of the Minnesota Revised Laws of 1905. Broadly speaking, Section 3462 specified where a chattel mortgage must be filed. But specifically it provided two factors for determining where the instrument should be filed. They were: (1) the geographical area wherein the instrument must be filed—i. e., the organized *municipality* or (if the debtor resided in an unorganized town) the county wherein the debtor resided, and (2) the particular office wherein the instrument must be filed within the specified geographical area—i. e., the *office of the clerk or recorder* of the particular organized municipality wherein the debtor resided, or in the office of the county register of deeds if the debtor resided in an unorganized town. Those provisions of Section 3462 and the requirements they enunciate have continued from 1905 to date without express amendment or repeal and are printed now as Section 511.04.

In 1913 the Minnesota Legislature enacted Chapter 143 of the Minnesota Session Laws of 1913. That statute was entitled, "An Act to provide for the filing of chattel mortgages, bills of sale of chattels, and conditional sale contracts in the office of the *register of deeds* of the several counties; providing for the transfer of such instruments now on file with clerks and recorders of municipalities, and the records and record books of the same, to the offices of register of deeds * * * for filing such instruments." (Italics supplied.) [2]

1. Section 511.20(4) provides that Sections 511.20(2) and 511.20(3) shall not apply to conditional sales contracts. Consequently, Section 511.20(1) is the controlling provision.

2. "Section 1. Chattel mortgages, etc., not to be filed with clerk or recorder.—On and after July 1, 1913, no chattel mortgage, bill of sale of chattels, or conditional sale contract, shall be filed with the clerk or recorder of any municipality * * *.
"Sec. 2. To be filed with register of

deeds.—On and after July 1st, 1913, chattel mortgages, bills of sale of chattels and conditional sale contracts may be filed with the register of deeds of the county in which the mortgagor or vendor resides, if a resident of the state, and if the mortgagor or vendor is a non-resident of the state, then in the county in which the property mortgaged or sold is then situate. Duplicates of such chattel mortgage, bill of sale of chattels, or conditional sale contract, or copies thereof certified by the register of deeds of

The question becomes,. What was the effect of Chapter 143 upon Section 3462? Section 1 of Chapter 143 *prohibited* the filing of chattel mortgages, conditional sales con-

the county in which any such instrument may be properly on file may be filed with the register of deeds of any other county, wherein any part of such property was situate when the instrument was made.

"Sec. 3. Duty of register of deeds—Fees.—Every register of deeds on and after July 1st, 1913, shall receive and file any chattel mortgage, bill of sale of' chattels, or conditional sale contract, which shall be executed, witnessed, and acknowledged according to law, and shall immediately number and index the same, and certify on each instrument the exact time of receipt, which certificate shall be prima facie evidence of the facts stated therein. No such instrument shall be removed from the office where filed until cancelled, released, or satisfied. The fees for filing chattel mortgages, satisfactions, and conditional sale contracts, shall be ten cents for each instrument and twenty-five cents for a certified copy thereof, said amount to be paid to the register of deeds at the time of filing, and such fee shall be retained by the register of deeds, as additional salary and compensation for filing such instruments.

"Sec. 4. Index book to be kept.—Every register of deeds shall keep in his office an index book in which he shall enter the number given to every such instrument, the names in alphabetical order of the mortgagee and mortgagor, and vendee and vendor, and the exact time of filing the instrument. In case of a chattel mortgage, or conditional sale contract he shall also enter the sum secured thereby, and the satisfaction of the same when made. In case of a bill of sale of chattels, he shall also enter the amount of the consideration expressed in the instrument. Every such instrument so filed shall be notice to all persons of the existence thereof.

"Sec. 5. Certified report of proceedings to be filed with register.—On and after July 1st, 1913, the certified report of his proceedings required to be made by the person or officer making a sale of mortgaged property as required by Section 3470, Revised Laws 1905, shall be filed in the office of the register of deeds where the chattel mortgage is filed or to which it has been transferred, and when so filed, such report, or a duly certified copy thereof, shall be prima facie evidence of the facts therein stated, and on and after July 1st, 1913, no such report

shall be filed in the office of any clerk, or recorder of a municipality.

"Sec. 6. Clerk or recorder to deliver all documents to register of deeds after July 1st, 1913.—Each municipal clerk or recorder shall, on the first day of July, 1913, deliver all chattel mortgages, bills of sale of chattels, and conditional sale contracts then on file with him, and all records of the same in his custody, to the register of deeds of his county, and said register of deeds shall thereafter be the custodian of the same, and of the records thereof, and no new filing, indexing, or record thereof need be made by said register of deeds.

"Sec. 7. Expenses for delivering by clerk or recorder.—Each municipal clerk or recorder shall be paid out of the treasury of his county the sum of ten cents per mile in traveling from his place of business to and returning from the county seat of his county, for delivering said instruments and records to the register of deeds of this county. The register of deeds of each county shall receive the said instruments and records as delivered to him by the several municipal clerks and recorders of his county and safely keep and preserve the same in his office, and endorse on each instrument and record book the date of the receipt of the same by him, and thereafter said instruments and records shall be notice to all persons of the existence and terms thereof with the same force and effect as when filed pursuant to Chapter 67, Revised Laws 1905.

"Sec. 8. Fees for receiving and keeping records.—For receiving, keeping and preserving, and endorsing all of said instruments and records transferred to him as aforesaid, there shall be paid to the register of deeds out of the treasury of his county, a fee according to the population of his county as shown by the 1910 national census of the United States of America, which fee shall be as follows:

"In counties having a population of 50,000 or less, $10.00;

"In counties having a population exceeding 50,000 and not more than 100,000, a fee of $25.00;

"In counties having a population exceeding 100,000 and not more than 150,000, a fee of $50.00;

"In counties having a population. exceeding 150,000 and not more than 200,000, a fee of $100.00;

"In counties having a population exceeding 200,000 and not more than 300,000, a fee of $125.00;

tracts, and bills of sales with the city clerk or village recorder after July 1, 1913. Section 2 *required* all such future instruments to be filed with the register of deeds of the county wherein the mortgagor or vendee resided, and Section 3 *required* the register of deeds to accept the instruments for filing. The other sections of Chapter 143, except Sections 5, 9 and 10, provided for the carrying out of the Act's provisions, including the turning over by the municipal recorders and clerks to the register of deeds for their county all instruments previously recorded by the municipal clerk or recorder. Section 9 excepted cities of the first class from the effect of Chapter 143, and Section 10 impliedly repealed and amended all acts inconsistent with Chapter 143. Section 5 provided for filing notices of sale of mortgaged property. Obviously, Chapter 143 impliedly amended and superseded some of the provisions of Section 3462. Read as superseded and as amended by implication by Chapter 143, Section 3462 provided in 1913 that when the mortgagor or vendee resided in a city of the first class, the instrument was to be recorded in the office of the City Clerk for that city. When the mortgagor or vendee resided outside a city of the first class, Chapter 143 applied, and the chattel mortgage or conditional sale contract was required to be filed in the county wherein the mortgagor resided and in the office of the register of deeds for that county. Like Section 3462, Chapter 143 never has been amended expressly or repealed expressly to this date. But no reference is made to it in the present statute books except under what is now 511.27, which was Section 5 of Chapter 143.[3] Omission of all except Section 5 of Chapter 143 from the statute books is explained by the enactment of Chapter 364 of the 1915 Session Laws, which, except for an immaterial amendment to Section 1 of Chapter 364 in 1917, now appears in the statute books as Sections 511.20(1) and 511.21 to 511.26.[4] Chapter 364 of the 1915 Session Laws did not expressly amend or repeal Chapter 143 or Section 3462, as amended by Chapter 143. Consequently, any changes it made in those laws must exist through repeal or amendment by implication or because it may supersede them. Its meaning is inextricably related to its effect upon those previously existing laws. Chapter 364 has not been repealed or amended expressly to this date with respect to conditional sales contracts except for the 1917 amendment which is immaterial here.[5]

At the outset it is apparent that Section 1 of Chapter 364 conflicted with Section 3462, as amended and superseded, and also with Chapter 143, among other ways, by using situs of the personalty as the element which determined the geographical area to which the instrument to be filed must be related, whereas both Section 3462, as amended, and Chapter 143 used residence for that purpose.

Section 7 of Chapter 364 (511.26) literally rendered Sections 1 to 7 (511.20(1) and 511.21 to 511.25) inapplicable (1) to cities of the first class and (2) to counties wherein the salary of the register of deeds is fixed by special law. The first exception of Section 7 is consistent with Section 9 of Chapter 143. Both provisions render their respective statutes inapplicable to cities of the first class. However, no statutory provision comparable to the second exception of Section 7 existed in Chapter 143. But it must be noted that when Chapter 364 was enacted, Chapter 143 applied to the geo-

---

"In counties having a population exceeding 300,000, a fee of $200.00.

"Sec. 9. This act shall not apply to cities of the first class.

"Sec. 10. All acts or parts of acts inconsistent herewith are hereby repealed.

"Sec. 11. This act shall take effect and be in force from and after July 1st, 1913.

"Approved March 31, 1913."

3. The 1913 Minnesota Statutes included Chapter 143 as Sections 6985 to 6992.

4. Section 1 originally provided, "Any instrument evidencing a lien on or reserving title to personal property which instrument by statute may be filed with the clerk or recorder of any municipality, or a true copy thereof shall be filed with the register of deeds in the county in which the personal property is situate." The present form is 511.20(1).

5. See footnote 1.

graphical areas covered by that second exception (that is, to counties where the salary of the register of deeds is fixed by special law) and Section 3462, as amended by Chapter 143, then applied, *and was limited by Chapter 143* to the geographical area (cities of the first class) covered by the first exception. Chapter 364 did not *expressly* state which statute should apply to the areas covered by the exceptions covered by Section 7. It did not purport to choose whether Chapter 143, Section 3462 as amended by Chapter 143, or any other statute should apply to the situations literally excepted from the operation of Chapter 364 by Section 7. Nor did Section 7 or any other provision of Chapter 364 purport to broaden the scope of any existing statute in order to make it applicable to the excepted situations. The form of Section 7 as an exception negatives any affirmative choice of statutes by that provision. The obvious purpose of Section 7 was to remove from Chapter 364 the situations covered by the exceptions, not to affirmatively create or enlarge any statute so it would apply to all the excepted situations. It seems obvious that the Legislature intended each previously existing statute to continue to apply to the excepted situation which was within its scope. As a result, Section 3462, as amended, was the only statute which could be applied to the first exception of Section 7. No other statute covered cities of the first class. Chapter 143 was the only statute which could be applied to the second exception. No other statute covered the geographical area of a county. But neither Section 3462 as amended or Chapter 143 covered both exceptions of Section 7. Because Chapter 143 and Section 3462, as amended, were the only enactments other than Chapter 364 which covered filing of chattel mortgages and conditional sales contracts, they, so far as applicable, had to apply to the respective excepted situations covered by Section 7 if a hiatus was to be avoided in Chapter 364. Moreover, Section 3462, as amended, and Chapter 143 obviously could be applied only to the situations covered by the exceptions of Section 7, for Section 1 of Chapter 364 [511.20(1)] was all-inclusive. Consequently, the broad legislative intent in enacting Chapter 364, and particularly Section 1 [511.20(1)] thereof, together with its effect upon Section 7 [511.26] and Chapter 143 and Section 3462, as amended, must be determined in order to determine the present meaning of 511.04 and 511.20(1) and whether the mortgagor's residence or the property's situs determines the geographical area wherein the instrument must be filed.

In 1928 the Minnesota Supreme Court decided Good v. Brown, 175 Minn. 354, 221 N.W. 239, which involved the city of the first class exception of 511.26 and, thereby, 511.04. There the court had before it the exact broad question now before this Court: Do Sections 511.04 and 511.26 (Section 7 of Chapter 364) apply or does Section 511.20(1) (Section 1 of Chapter 364) apply? There the mortgagor resided in Duluth, Minnesota, which was a city of the first class. The property had its situs in Cook County, and the chattel mortgage had been recorded in Cook County with the register of deeds pursuant to 511.20(1). The Supreme Court held that the entire plan for recording chattel mortgages had been changed by Chapter 364 (now 511.20 (1) and 511.21 to 511.26), and that therefore Cook County (the situs of the personalty) and *not* Duluth (the residence of the mortgagor) was the proper place to record the instrument. The court held that the failure to record the instrument in Duluth, where the mortgagor resided, did not affect the mortgagor's rights. In other words, the court held that the situs element adopted by 511.20(1) prevailed over the residence element used by 511.04, and therefore that the situs of the personal property, not the residence of the mortgagor, was the relationship which must exist between the geographical area covered by the first exception of 511.26 and the instrument to be filed. Compare Snyder Automotive, Inc., v. Boyle, 162 Minn. 261, 202 N.W. 481. The court reached the conclusion despite the literal words of 511.26 and 511.04.

This result of Good v. Brown necessarily recognized that in 1915 the Legislature removed from Section 3462, as amended, the residence element which it purported to state, and that the Legislature substituted

the situs element of 511.20(1) therefor by implication. For if, as the court held in Good v. Brown, the mortgagor's residence in Duluth was insufficient, standing alone, to require the instrument to be filed in Duluth, and if situs of the property in Cook County justified the filing in Cook County even though the mortgagor did not reside there, it is apparent that situs is the sole determining element, and that residence is important only if it coincides with situs. When the residence element is removed from 511.04, as amended, and replaced by the situs element, the only provisions therein remaining would pertain to the offices wherein the instrument was to be filed within the city of the first class, which is the only geographical area to which 511.26 permits 511.04 to apply. Because of Good v. Brown, Section 511.04 meant in 1915 that when the situs of property was in a city of the first class, the instrument must be recorded with the city clerk of that city. That was the meaning which the first exception of 511.26 permitted it to retain.

Obviously, Chapter 143, which would apply to the area covered by the second exception of Section 511.26, also would be subject to the basic principle of Good v. Brown.[6] That is, situs, not residence, would be the element which would relate the transaction to the geographical area in which the instrument must be filed. For it is a well-settled principle that related provisions must be interpreted in light of each other. And here Chapter 143 would be given effect because it covered counties wherein the salary of the register of deeds was fixed by special law—the geographical area covered by the second exception of 511.26. That exception is a part of the same section as the exception which was interpreted in Good v. Brown, and which limited and changed the meaning of Section 3462, as amended, so it would proceed upon the basis of situs, not residence. The recording plan of Chapter 364 was a single plan, not a multifarious one which sought

different results in different areas without expressing such intent. The reasons justifying the conclusion in Good v. Brown that situs, not residence, is the determining factor of the place of filing with respect to matters covered by Section 511.04, also would justify the same conclusion with respect to matters covered by Chapter 143. Otherwise inconsistent, uncertain, and absurd results could follow.

Consequently, under Chapter 143, which would be made applicable by the second exception, an instrument would be recorded in the office of the register of deeds for the county wherein the property was located. Comparison with 511.20(1) shows that this is the same place of filing provided for in 511.20(1). So if the second exception of 511.26 were applied to 511.20 (1), as the literal terms of 511.26 provides, the exception would be surplusage and of no effect with respect to its application to 511.20(1). For the same result would occur under 511.20(1) without the exception as would result under Chapter 143 with the exception. Under either statute, the instrument would be filed with the register of deeds for the county wherein the property was situated. The conclusion of surplusage also would be true if the second exception of 511.26 literally were applied to 511.21, 511.22, 511.23, and 511.24. Each of those sections also has its counterpart in Chapter 143.

To hold that no provision should be construed to make it surplusage, and that every word should be given reasonable meaning and effect, if possible, merely states a fundamental rule of statutory construction consistently reiterated by the courts. Moreover, if that second exception to 511.26 were held to apply to all the provisions of Chapter 364 (as 511.26 literally provides), the obvious purposes of the second exception would be frustrated. For 511.25 set fees for the services rendered by each register of deeds in connection with the transferring of the instruments from the clerk's office to the office of the register

6. The Court assumes (as do the parties hereto) that the salary of the register of deeds for Hennepin County is fixed by special law within the meaning of 511.26, and that such special law is a valid one. The Court renders no decision on those questions, however.

of deeds. The second exception literally states that the provisions granting fees to the register of deeds for services he rendered with respect to instruments transferred to him by the clerks shall not be applicable to counties wherein the register of deeds receives a salary set by special law. Thus the second exception evidences a legislative intent that the register of deeds who receives a salary should not receive the fees provided for by Chapter 364 for transferring the records. However, if the second exception were applied literally to all provisions of the statute of which it was a part (as 511.26 says), then the fee question as well as others would be covered by Chapter 143, not Chapter 364, and the register of deeds would receive a fee for his work under Chapter 143—despite the intent which was evidenced by Chapter 364. For Chapter 143, which would apply to the counties wherein the register of deeds received a salary set by special law, granted fees to the register of deeds for the work he performed in transferring the documents fom the clerk to the office of the register of deeds. Consequently, if the second exception were applied literally, it would be applied in contradiction of its own obvious intent concerning the right of a register of deeds who received a salary to receive certain fees in addition to the salary. And it would be surplusage with respect to most of the statute in which it is found.

That the Legislature intended such a contradictory situation cannot be presumed. On the contrary, the Legislature must be presumed to have used the words thoughtfully and meaningfully, not uselessly. "The legislature does not intend a result that is absurd, impossible of execution, or unreasonable." Minn.Stat.Annotated, § 645.17. In order to give meaning to the second exception, therefore, it must be applied only to those sections which enable it to have meaning, not to those sections which destroy its effect and intent or make it surplusage. The second exception of 511.26 has meaning only if it relates exclusively to 511.25, which concerns fees to be paid to the register of deeds, and if it is interpreted in light of its purpose with respect to that section. It must be held inapplicable to Section 511.20(1) and to those provisions of Chapter 364 which concerned transfer of records by the municipal clerks, keeping of indices, and other sections which are necessary to effectuate the requirements of 511.20(1) and which have no particular relation to counties wherein the register of deeds is paid a salary.

Thus interpreted, the second exception of 511.26 has no reference to where an instrument must be filed when the situs of the property is in a county wherein the register of deeds is paid a salary fixed by special law. That question is governed by Section 511.20(1). The second exception of 511.26 means that no register of deeds whose salary is fixed by special law is entitled to fees for his work of transferring the files and instruments covered by Chapter 364 from the clerk or recorders to the office of the register of deeds. That such a conclusion disregards the literal meaning of 511.26 is evident. But Good v. Brown establishes that this Court may look to the purpose of the exceptions and the Act of which it is a part and the effect of implied amendments in order to determine the true meaning of the exception. Literal terms obviously must be limited by the implied amendments and superseding provisions of subsequent statutes.

This true meaning of the second exception of 511.26 and the result which Good v. Brown would have upon Chapter 143 points out also the true effect of Chapter 364 upon Chapter 143. Actually, the statutes became practically synonymous except for Section 5 of Chapter 364 (now 511.27) and the limitation which the second "exception" of 511.26 places upon the right of the register of deeds to accept fees for transferring records from the clerks'. offices to the office of the register of deeds. Both Chapter 143 and Chapter 364 used the office of the register of deeds as the office of filing. Both used the County as the geographical area wherein the instrument should be recorded. Neither applied to instruments concerning property which had its situs in a city of the first class. Situs became the element which related the transaction to the place of filing under both statutes by virtue of the

rule in Good v. Brown. Both statutes applied only to instruments which concerned property having its situs outside a city of the first class. Sections 2, 3, 4, 5, and 6 of Chapter 364 were comparable (and in places identical) with Sections 3, 4, 6, 7, and 8 of Chapter 143. The titles of both statutes were substantially identical and in part coincided word for word.[7]

This close similarity between the literal provisions of the statutes shows that the legislative intent for both statutes was similar. The court's decision in Good v. Brown recognizes that Chapter 364 was intended to control over previous statutes. The Legislature intended Chapter 364 to create a new scheme and a complete scheme for filing chattel mortgages. Chapter 143 and Chapter 364 were almost co-extensive in scope. Their main differences were remedied by implied amendments. The other differences were not substantial and did not affect the basic scheme of Chapter 364. Such a situation indicates a legislative intent that Chapter 364 should supersede Chapter 143 except for Section 5 (now 511.27), which had no counterpart in Chapter 364. See also Report of Revisor of Minnesota Statutes of 1945, Table I, which indicates that Chapter 364 superseded Chapter 143.[8]

Because the superseding statute's provisions were similar in intent with those which it superseded and because of the close relationship between them, it seems evident that the two must be construed in the light of each other. The mere fact that one statute supersedes the other does not render the superseded statute irrelevant for determining the intent of the later statute when the provisions and intent of the two statutes are similar. There is no intent apparent in Chapter 364 to destroy or abandon the broad intent of Chapter 143 except with respect to the residence element used by Chapter 143. Chapter 143, like Chapter 364, intended that instruments having the required relationship to cities of the first class should be the only ones which were not filed in the office of the county of the register of deeds. No intent to destroy that policy is apparent in Chapter 364.

Therefore, 511.04, as amended, provides that chattel mortgages upon property having its situs in a city of the first class must be recorded with the clerk of that city. Section 511.20(1) provides that all other chattel mortgages must be recorded in the office of the register of deeds for the county wherein the property has its situs. Section 511.26 makes 511.04 applicable only to the first exception. The soundness of this conclusion is supported by Sections 511.20(2) and 511.20(3). For at least some of the instruments covered by Section 511.20(1) also are covered by Sections 511.20(1) and 511.20(3). The filing requirements and filing scheme which Sections 511.20(2) and 511.20(3) have adopted for the instruments to which they pertain are the same as this Court concluded above must be applied to chattel mortgages and conditional sales contracts under 511.20(1). It is well settled that statutes relating to similar matters must be interpreted in light of each other and consistently if possible. That mandate is followed under this Court's interpretation of 511.20(1) and 511.04.

The revision of 1945 did not change the meaning of Section 511.04 or 511.20(1) or 511.26. The only change made by the Revisor was the substitution of section numbers in 511.26 for the phrase "This Act." The 1945 revision was the first since 1905. The Minnesota Session Law ap-

---

7. The title of Chapter 364 reads as follows: "An Act to provide for the filing of liens and instruments evidencing liens on or reserving title to personal property in the office of the register of deeds of the several counties; providing for the transfer of such instruments now on file with clerks and recorders of municipalities, and the records and record books of the same, to the offices of registers of deeds, and providing for mileage and fees for making such transfers, and providing for fees of registers of deeds for filing such liens and instruments."
   For text of Chapter 143 title, see page 5 [104 F.Supp. 176], supra.

8. The Revisor's table appears to indicate that *all* of Chapter 143 was superseded. However, Section 5 thereof remained. It is now 511.27.

proved March 8, 1945, "adopted and enacted" the "Minnesota Revised Statutes." Section 3 thereof expressly stated that

"The laws contained and compiled in 'Minnesota Revised Statutes' are to be construed as continuations of the acts from which compiled and derived and not as new enactments."

And in State ex rel. Bergin v. Washburn, 1947, 224 Minn. 269, 28 N.W.2d 652, wherein the court considered the effect of the 1945 revision, the court held,

" * * * A revision of an existing statute is presumed not to change its meaning, even if there be alterations in the phraseology, unless such intention to change the law clearly appears from the language of the revised statute."

Standing alone, the mere substitution of numbers for the phrase "This Act" evinces no intent to change the meaning of what is now 511.26 or 511.20(1) or 511.04. Nothing appears to change that result. In the Revisor's Report, the Revisor notes that no material changes were intended to these statutes. See Table IV of the Revisor's Report.

In the instant case the situs of the cash register was in St. Louis Park, where the partnership did business and where the cash registers were used at all times. The parties to the conditional sales contract intended that the registers be used there, for they were delivered to the St. Louis Park address, the place of business of the vendee, under the terms of the conditional sales contract signed by both parties. St. Louis Park was not a city of the first class. It is located in Hennepin County, however. Therefore, the conditional sales contract here was properly recorded in the office of the register of deeds for Hennepin County, wherein St. Louis Park is located. Section 511.20(1) controls. Sections 511.04 and 511.26 are inapplicable. The question certified to this Court by the Referee in Bankruptcy must be answered affirmatively.

The considered decision of the Referee in Bankruptcy therefore must be, and it hereby is, reversed. It is so ordered.

An exception is reserved.